(136 So. 8)

**RUSSELL v. SULLIVAN.**
No. 30269.

March 2, 1931.

On Rehearing June 22, 1931.

Eberle & Shaw, George P. Eberle, and William A. Shaw, all of New Orleans, for appellant.

Brewer & Sere, of New Orleans, for appellee.

ODOM, J.

This is a suit for $4,125.98, which plaintiff alleges is the balance due him on certain promissory notes executed by defendant, which notes plaintiff alleges he acquired in due course.

Defendant admitted in answer that he signed the notes, but denied that he was indebted to plaintiff in any amount whatever. His defense is that the notes were given by him to the Russell Sugar Company, Inc., a corporation, in connection with certain partnership transactions which took place between him and the said corporation from which plaintiff acquired the notes; that the af-

fairs of the said partnership had never been settled as was contemplated, and that an accounting between him and the said Russell Sugar Company, Inc., would disclose that the amount which plaintiff now alleges is due on said notes was compensated by amounts which said corporation owed him. He denied that plaintiff is the holder of said notes in due course.

There was judgment in the district court rejecting plaintiff's demands and dismissing his suit as in case of nonsuit. Plaintiff appealed.

The Russell Sugar Company, Inc., was engaged in buying and selling sugar, and the defendant Sullivan was a sugar broker. In the year 1920 the plaintiff, who was an officer in and general manager of the said corporation, and the defendant entered into a verbal agreement to the effect that defendant, who was traveling through the sugar manufacturing district of Louisiana, would purchase for the account of and have shipped to the corporation sugar in wholesale lots, to be sold by it for the joint account of the corporation and defendant, the profits or losses, as the case might be, to be shared equally.

This arrangement was to apply only to such lots of sugar as might be especially agreed upon and did not apply to all sugar which might be purchased by the defendant. Sullivan. He was at liberty to purchase sugar for the account of other dealers or for his own account as he saw fit. But due to his personal friendship for the plaintiff, defendant was disposed to give the corporation the privilege of handling those lots of sugar which it might select, it being understood that only such lots as might be agreed upon were to be purchased for the joint account of the corporation and defendant. Each lot so purchased was to be sold by the corporation at such time as it saw fit at the best

prices obtainable. As each separate lot of sugar was sold, the profit or loss, as the case might be, was shown on the books of the corporation, and each transaction was figured separately.

It appears that in the years 1921, 1922, and 1923, losses were sustained on certain transactions, the defendant's share of which, as shown by the books of the corporation, amounted to $4,790.25 in the year 1921, $676.-94 in the year 1922, and $352.33 in the year 1923. It seems that the corporation advanced the funds to buy the sugar and paid all the expenses of handling it, so that defendant owed it one-half the losses as above shown. Not having the funds with which to pay his part of the losses, defendant gave to the corporation his notes to cover them, and these are the notes involved in this suit.

But there were three other separate transactions from which profits were made, one-half of which belonged to defendant. According to the books of the corporation, defendant's share of the profits on these three transactions aggregated $8,048.46. As all the proceeds of these sales went into the hands of the corporation, it owed and should have paid to defendant this amount. But it accounted to him for his share of the profits on only one of these transactions.

There were offered and filed in evidence three documents or statements, marked "Defendant 1," "Defendant 2," and "Defendant 3." According to Miss Hinckle, the bookkeeper for the corporation, these statements were made up by her from data obtained in the office of the corporation and are recapitulations showing one-half the net profits on these transactions. The statement marked "Defendant 2" bears no date, but shows the handling of 3,875 barrels of sugar, one-half of the profits amounting to $2,842.73. The

corporation credited defendant with this amount on his note for $4,790.25.

The statement marked "Defendant 1" is a recapitulation showing another transaction involving 6,680 bags of sugar on which a profit was made, one-half of which amounted to $3,578.67. This statement is dated September 23, 1923. The statement marked "Defendant 3" is a similar recapitulation showing that on another occasion 4,415 bags were sold at a profit, defendant's share being $1,-627.06. These statements were made out to Walter A. Sullivan showing his one-half of the profits made on these transactions.

The corporation unquestionably became indebted unto defendant for the amounts shown on statements marked "Defendant 1," and "Defendant 3," aggregating $5,205.73. But it has never paid the amounts or accounted to defendant for them.

The plaintiff was asked whether these statements were correct, and replied that he could not say, that he had no independent recollection of them, that all the books of the corporation had been destroyed, and that Miss Hinckle was the bookkeeper and should know whether they were made from the books of the corporation. Miss Hinckle testified that she made the statements from data which she obtained in the office of the corporation while she was bookkeeper, and that they were correct. She further stated that she made these statements at the request of the plaintiff. Plaintiff was further asked if any of the transactions which he had with defendant were profitable, and he replied that some of them were, and that defendant had been given credit on the notes for whatever amount was due him. That he was mistaken manifestly appears.

"When two persons are indebted to each other, there takes place between them a com-

pensation that extinguishes both the debts, in the manner and cases hereafter expressed." Civ. Code, art. 2207.

"Compensation takes place of course by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums." Civ. Code, art. 2208.

"Compensation takes place only between two debts, having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable. * * *" Civ. Code, art. 2209.

█ These debts were equally liquidated and demandable and existed simultaneously, so that the debt of defendant to the corporation was extinguished by the debt of the corporation to him.

These notes were acquired by plaintiff from the corporation, and, while he claims that he acquired them in due course, yet we find as a fact that he was not a holder in due course for the reason, among others, that he acquired them after they were overdue. Plaintiff testified that when the corporation was liquidated in 1925 these notes were turned over to him on a debt which the corporation was due him. Each of the notes fell due long before that time. Section 52, Act No. 64 of 1904.

Defendant interposed the plea that these notes arose out of partnership transactions and contends that partners have no cause of action against each other for specific sums resulting from partnership transactions until there has been a settlement of the partnership affairs and the debts have been paid. We do not find it necessary to discuss this point. The facts as already stated are that the parties did make a settlement after each separate transaction as is evidenced by the fact that defendant gave notes for his part of the losses, and in one case where there was a gain he was given credit for his share.

We might add that it would be vain and idle for either party to insist upon any further efforts to settle for the reason that all the books of the corporation have been lost or destroyed. All the evidence which could be produced is now before the court, and after reviewing it we have reached the conclusion that the defendant is not indebted to the plaintiff in any sum.

Counsel for defendant in oral argument and in brief ask that this court render judgment rejecting plaintiff's demands outright. We think that should have been the judgment of the lower court, but, as defendant did not appeal nor move to amend, we can only affirm the judgment.

The judgment appealed from is affirmed at plaintiff's cost in both courts.

### On Rehearing.

█ The application of defendant for a rehearing in this case was granted. The action of the court in granting it was prompted by the fact that, on the first hearing, on the record before it, the court was of the opinion that the judgment, instead of being one of nonsuit, should be an absolute judgment in favor of defendant, but that it was unable to make the judgment absolute, since defendant, who was the appellee, had not, as it thought, by answer to the appeal, asked that the judgment be amended by making it an absolute one in his favor. However, the court was mistaken in its impression that defendant had not filed the required answer to the appeal, and therefore it became obvious that defendant was entitled to a rehearing.

After the granting of the rehearing, plaintiff has filed, in this court, a motion to re-

mand the case, the motion resting chiefly on the ground that he, through his counsel, has discovered, by accident, records in writing, which were not available upon the trial of the case, showing that defendant and appellee herein, has been paid by bank checks of the Russell Sugar Company, Inc., the identical sums of money he claims as due him by that company. In support of this motion counsel has filed, as a part of it, a sworn statement of some of the bank checks, issued by the Russell Sugar Company, Inc., payable to defendant and appellee, which he urges will show that defendant's claims are utterly unfounded. The application is sworn to by one of plaintiff's counsel, and with it is also filed an affidavit by the bookkeeper of the Russell Sugar Company, Inc., accounting for the books of that company, which were supposed to have been lost or destroyed, showing that the check stubs, which have been found, are in the bookkeeper's handwriting, and that the records were misplaced and were not available at the time of the trial. There is also attached to the application a sworn itemized copy of the bank account of the Russell Sugar Company, Inc., and a sworn comparison, by a certified public accountant, of the check stubs of that company with the books of the bank, and showing that the bank charged the company with amounts similar to the amounts shown on the stubs, showing checks drawn in favor of defendant.

If the facts, shown in the motion to remand, should be established, they would have an important bearing on the case, and might bring about an entirely different result. It would be going too far, in the face of the showing now made, to grant defendant the amendment, prayed for, in the answer to the appeal, making the judgment, appealed from, an absolute or final judgment in favor of defendant, since this step might result in an injustice. Therefore the question is presented whether we should remand the case or merely reinstate our former decree, affirming the judgment of the lower court, which was one of nonsuit. All things considered, including the fundamental and contradictory nature of the evidence, as compared with that now in the record, which the present showing may be expected to bring about, leads us to the conclusion that it would be better, in the interest of justice, merely to reinstate our former decree. If plaintiff should then desire, he may bring his case anew, and show all of the facts, now available, pertinent to the case, and defendant will be equally as well protected.

For these reasons, our former decree is reinstated, and made the judgment of the court.